## Allegheny City *versus* Reed.

1. Territory liable to grant as an island under the Act of 1806 relative to islands in the rivers Delaware, Ohio and Allegheny should have a soil capable of sustaining vegetation.

2. The time when application is made for an island is the time when the character of the territory is to be ascertained.

3. Land which had been an island, but from which the soil capable of sustaining vegetation had been carried away by freshets, and which was overflowed by the river Allegheny in ordinary stages of about seven feet deep in the channel, is not an island liable to be taken up under the Act of 27th January, 1806, which requires the appraisers in valuing] the same to have regard to *the soil* and other advantages thereof.

4. The decision of the board of property to grant a warrant of survey for an alleged island, after *caveat* filed, is not conclusive in the matter.   The Act of 1792, prescribing the effect of their decisions as to *patents* for land, has no application to *islands*.

ERROR to the District Court of *Allegheny county*.

This was an action of ejectment by William Reed and Molton C. Rogers, for an alleged island, called Killbuck or Smoky Island, situate in the Allegheny River, near its mouth, containing above 40 acres.

William Reed, by his written application, dated 3d September, 1849, applied to the land office for the purchase of what was termed the remaining part of Smoky or Killbuck Island, with the

bar on which the lower end of Killbuck Island stood before 1829, not covered by the warrant of E. G. Nelson, situate in the Allegheny River. Three persons were appointed to appraise the territory applied for, from whose report it appeared that most of the ground applied for was then "a gravel bar, frequently covered by high freshets, but bare at ordinary stages of water." They also stated that the ground was once the base of Smoky or Killbuck Island, and they reported it to contain 44 acres and 68 perches, excluding the ground covered by Nelson's survey, and the part claimed by Ledlie under a patent to Robinson; and that, having regard to the "wood, fishing, and other advantages, and local situation," they valued it at $135 per acre.

In the report several questions were suggested, amongst which was, whether a bar in the river, that was formerly an island, was a subject of grant by the state.

On the 28th December, 1849, an informal *caveat* was entered in the land office, by Jonathan Rush, mayor of the city of Allegheny, addressed to the surveyor-general, protesting, on behalf of the citizens of Allegheny, against the issue of any order of valuation or survey for what was once Killbuck or Smoky Island; and a *caveat* was filed by William Robinson, Jr., on the 1st of November, 1849, against the issuing of a warrant to William Reed, on his application. The third Monday in September, 1851, was appointed for a hearing of the parties in the case of the *caveat*, before the board of property; and, on the 15th of September, 1851, the board of property directed the surveyor-general to issue a warrant to William Reed, on his payment of the one-third of the valuation thereof. On the 15th of September, 1851, William Reed paid the state treasurer $1999.12½, being the one-third of the purchase-money for 44 acres and 68 perches of an island called Smoky or Killbuck; and thereupon the same day a warrant of survey was issued, directed to the deputy-surveyor of Allegheny county, in favor of Reed. The survey was made, and a copy or draught thereof, dated October 17, 1851, was certified and returned to the land office. According to this *survey*, the island contained 43 acres and 127 perches. For the land embraced in this survey, called Smoky or Killbuck Island, the action was brought.

The defence set up was, that, at the date of the plaintiff's application and warrant of survey, there was no such island as Killbuck or Smoky Island in the Allegheny River—the said island, formerly known as Killbuck or Smoky Island, having been swept away prior to the date of the plaintiffs' application—and that the Act of 27th January, 1806, does not authorize an application and warrant of survey for the land described in the writ, the same being a sand-bar and the bed or shore of the river.

2d. That the land described in plaintiffs' survey is not located on the site of what was formerly Smoky or Killbuck Island.

[Allegheny City v. Reed.]

3d. That the city of Allegheny, the defendant in this case, was not in possession of the land claimed by the plaintiffs at the date of the institution of this suit, and that the city has never asserted or claimed title to the said land.

It was stated by the Court, that it was admitted and shown that, at the time of the passage of the Act of 27th January, 1806, for the sale of islands in the Delaware, Ohio, and Allegheny, there was an island situate in the Allegheny River, near its mouth, known as Killbuck or Smoky Island, containing from 30 to 40 acres; that it was inhabited and cultivated as a farm; but that, by the flood of 1832, the greater part of the soil and surface of the island was washed away; and that the residue of the soil and surface was carried away in 1839 or 1840, leaving a gravel bottom or sand-bar, surrounded by water at an ordinary stage of the river, but covered when the water was from 6½ to 7 or more feet deep in the channel of the river.

Whether the officers of the land office were authorized, by the Act of 27th January, 1806, to grant the warrant for the survey of the land in question, was *reserved*.

Verdict was rendered in favor of the plaintiffs, and on the point reserved judgment was afterwards rendered for the plaintiffs. In directing judgment, the Court (WILLIAMS, J.) observed that, after the soil of the island was washed away, the title still remained in the Commonwealth, the site of the island not having become permanently a bed of the river, but only being submerged at intervals; that the decision of the board of property in the matter was entitled to great consideration; and that, the board of property having authorized the issuing of the warrant, he did not consider it his duty to overrule their decision, and pronounce the warrant to be void.

Error was assigned to the decision of the reserved question in favor of the plaintiffs.

*Williams* and *Geiger*, for the city of Allegheny.

*Rogers* and *Dunlop*, for defendants in error.—It was, *inter alia*, contended that the decision of the board of appraisers was conclusive of the facts found by it; was analogous to the decision of the commissioner of patents in case of reissue on account of defectiveness of specification from inadvertence and mistake: his decision being impeachable only for fraud: 4 *How.* 380; 15 *Id.* 228; and that, by the Act of 1806, it was not requisite that an island in the *Allegheny River* applied for should be *susceptible of cultivation*, as is required in regard to islands in the Susquehanna: 5th section of Act 1806, and 1st section of Act of 2d April, 1822.

[Allegheny City *v.* Reed.]

The opinion of the Court was delivered by

Woodward, J.—The legislative idea of a river island may be correctly inferred from several enactments on the subject. Thus, by the 4th and 5th sections of the Act of 6th March, 1793, relating to islands in the Susquehanna and its branches, the board of property were to ascertain the value of the island applied for, whether improved or not, having regard to the *soil,* wood, and distance from the main land, and no warrant was to issue unless the island were susceptible of cultivation, and all sand-bars, not surveyed before 4th July, 1776, were to remain common highways for ever.

By the Act of 2d April, 1822, no application was to be received into the land office for an island in the Susquehanna, unless the same be at least four feet high above common low water, and containing at least forty perches of ground, exclusive of rocks, and be susceptible of cultivation in grain or esculent roots in common seasons, by their growing and becoming maturely ripe. And again, any sand or gravel bars, or accumulations of mud in the Susquehanna, which shall not come under the description of an island as above, shall be considered as part of the public highway.

By the Act of 27th January, 1806, relating to islands in the Delaware, Ohio, and Allegheny rivers, the appraisers appointed by the board of property are required, in valuing the land in such islands, to have regard to the *soil,* wood, fisheries, and other advantages thereof, and a pre-emption is secured to actual settlers, if any.

From these provisions, a legal definition of an island might easily be constructed, and it is apparent the definition would have to include a *soil,* and distinguish between an *island* and a *sand or gravel bar.*

The warrant issued by the board of property to the appraisers in this case, enjoined them to estimate and value all the land in the island applied for ; to ascertain the number of acres therein, and whether the same be susceptible of cultivation in grain or esculent roots in common seasons, and having regard to " *soil,* wood, fisheries," &c.—a form adopted at the land office for executing the Act of 1806, and which is a further indication that the Commonwealth means by an island, not a denuded gravel beach or sand-bar, but land having a *soil capable of sustaining vegetation.*

Was there any such island in the Allegheny known as Smoky or Killbuck island at the date of Reed's application on the 3d of September, 1849 ? It was admitted, and proved on the trial, that, at the date of the passage of the Act of 1806, there was such an island ; that it contained from thirty to forty acres, and was inhabited and cultivated as a farm, but that, in the flood of 1832, the greater part of the soil and surface of said island was swept off, and the residue was completely carried away in 1839 or '40, leav-

[Allegheny City *v.* Reed.]

ing, in the place of what was once a productive island soil, a gravel bottom or sand-bar, incapable of tillage, exposed to view and surrounded by water at an ordinary stage, but wholly covered or submerged when the water is from six and a half to seven feet deep in the channel of said river.

If the statutory definition be applied to these facts, it is apparent there was no island there when this title originated. The insular character of what had been known as Smoky or Killbuck island, was swept away with the soil. The title of the Commonwealth to what remained was not gone, but was no longer grantable under the Act of Assembly for selling islands. The foundation of the island belongs to the Commonwealth still, but she holds it, as she does the bed of the river and all sand-bars, in trust for all her citizens as a public highway. It is said the state may restore the island. Doubtless she has the right, if such a thing were practicable, to reconstruct an island on that foundation; and possibly it might then be grantable under the Act of 1806; but in 1849 she had no island there, according to her own recorded definitions of islands, and of course her grantee took no title. And that is the time at which the test is to be applied, and not the date of the law, as argued. The Act of 1806 was not a grant of the state's title, but only a mode prescribed in which titles might thereafter be granted. It would apply, no doubt, to islands formed by natural causes after its passage; and it is equally certain that it would cease to be applicable to islands existing at its date, but disappearing before application filed. The plaintiffs' title relates not back to the date of the law, but commenced with his application, and at that time Smoky or Killbuck Island was among the things beyond the flood.

The decision of the board of property to grant the warrant of survey after *caveat* filed, concludes nothing. The Act of 1792, prescribing the effect of their decisions upon *patents* for land, has no application to a proceeding of this sort. And, besides, the report of the appraisers, on which the board acted, left open for judicial decision the very questions which have been adjudicated in this case. The presumption is a fair one that the board intended to leave them as their appraisers left them. Whether this be so or not, however, the jurisdiction is a special one, and if the subject-matter, to which the Act of 1806 relates, were gone—had ceased to be—the board of property had no jurisdiction, no more than they would have over any other subject not intrusted to their discretion.

On the whole, our opinion is, that upon the facts admitted and established to the satisfaction of the Court below the plaintiffs exhibited no title, and that judgment should have been entered for the defendants on the reserved question.

The judgment is reversed and a *venire de novo* awarded.